[S. F. No. 5710. In Bank.—March 25, 1912.]

# W. G. HOLLAND, Respondent, v. W. J. HOTCHKISS et al., Appellants.

TAXATION—SALE TO STATE—VOID DEED—FAILURE TO GIVE NOTICE OF APPLICATION FOR DEED.—A tax-deed to the state as purchaser of land sold to it for delinquent taxes, and the subsequent deed from the state based thereon, made at a, time when the statute (Political Code, sec. 3785) required as a condition precedent to the execution of the deed that the purchaser must give to the owner of the property thirty days' notice in writing of his intended application for the deed, are rendered inoperative and void by reason of the failure to give such notice.

ID.—PROCEEDING TO SELL PROPERTY FOR TAXES MUST BE STRICTLY FOLLOWED.—Proceedings to sell property for taxes are to be strictly followed, and if there is any material irregularity in the assessment or in the subsequent proceedings, the sale, and the certificate and deed based thereon, are absolutely void.

ID.—EQUITABLE ACTIONS BY OWNER AGAINST PUBLIC AUTHORITIES TO RESTRAIN TAX PROCEEDINGS—PAYMENT OF TAXES CONDITION OF GRANTING RELIEF.—Where a property-owner applies for equitable relief against the public authorities, as, for example, to restrain proceedings for the collection or enforcement of taxes assessed against it, or to enjoin the execution of a tax-deed, or to cancel a lien or charge for taxes, of record against his land, and it appears that all or some part of the tax charged is justly and equitably due from the plaintiff, or chargeable upon the land, he must, as a condition of obtaining such relief, first pay or offer to pay the amount justly due, or he must be required to do so before the relief to which he shows himself entitled is given.

ID.—RULE APPLICABLE IN EQUITABLE ACTIONS AGAINST PURCHASER— DETERMINATION OF ADVERSE CLAIM.—The rule that he who seeks equity must do equity applies to suits in equity by the owner of

land against the purchaser at a tax-sale, or his grantee or assignee, to quiet title or to set aside a tax-sale or tax-deed, and to suits under section 738 of the Code of Civil Procedure to determine an adverse claim asserted under such sale or deed, in which a judgment for the plaintiff will, in effect, cancel or annul such sale or deed, and repayment of the taxes, penalties, and costs paid and interest thereon to the purchaser or his successor, less rents received, if any, if the purchaser has been in possession, must be offered or required before, or as a condition of, the judgment in favor of the owner.

ID.—SEEKER OF EQUITY MUST DO EQUITY.—RULE APPLIES TO ACTIONS UNDER SECTION 738 OF CODE OF CIVIL PROCEDURE.—The rule that he who seeks equity must do equity is applicable to an action to determine adverse claims under section 738 of the Code of Civil Procedure, to the same extent as in suits of the character formerly cognizable in equity to remove a cloud or cancel an instrument.

ID.—RULE DOES NOT APPLY TO ACTIONS BY TAX PURCHASER.—A different rule prevails in cases where the tax purchaser is the actor. In such cases, if the purchaser, claiming title under his tax-deed, sues for possession of the land, or if he sues the owner to recover the tax paid, as money paid to his use, the general rule is that he cannot prevail, that the rule of *caveat emptor* will be strictly applied against him, that a proceeding to assess and collect taxes creates no contract by the owner to pay the tax assessed, and that the law will not imply a contract by the owner to refund such tax to one who has paid the same upon a tax-sale which is void, and this is true in cases where the tax was legally assessed but the proceedings to sell defective, as well as where the assessment itself is unauthorized and void, or where the tax had been previously paid.

ID.—REPAYMENT TO PURCHASER MUST BE MADE OR SECURED BY JUDGMENT—INTEREST ON AMOUNT PAID FOR TAXES RECOVERABLE.—The relief to which such purchaser is entitled must be secured to him either by requiring the repayment of the taxes, penalties, and costs, with interest thereon from the time of payment, to be made or deposited in court before giving the judgment, or by inserting in the judgment a clause that it shall not take effect until such repayment is made. A judgment which omits to allow interest, and merely awards the defendant a certain amount for such taxes, penalties, and costs, without making the relief granted to the plaintiff conditional and dependent upon reimbursement to the defendant, is erroneous.

DEED—CERTIFICATE OF ACKNOWLEDGMENT—IMMATERIAL VARIANCE.—A certificate of acknowledgment to a deed, in which the officer certified that the grantor "acknowledged *to me*" the execution of the deed, is not defective, although the statutory form for such certificates in force at the time of the acknowledgment did not contain the words "to me."

ID.—CERTIFICATE BY NOTARY OF SISTER STATE—CLERK'S CERTIFICATE NOT ESSENTIAL.—Under subdivision 4 of section 1182 of the Civil

Code, a notary public of a sister state is authorized to take acknowledgments of deeds conveying lands within this state, and his certificate of acknowledgment, if in the form required by our statutes, is sufficient, without the certificate from the clerk of a court of record of that state provided for by section 1189 of that code. The clerk's certificate is required only in cases where the notary's certificate of acknowledgment does not show an acknowledgment which would be good under our own statutes.

ID.—SUFFICIENT CERTIFICATE—EXECUTION OF DEED—SEALING.—A certificate of such foreign notary, to the effect that the "grantor appeared before me, being personally known to me to be the same person described in and who . executed the foreging instrument and acknowledged that he signed and sealed the same as his free and voluntary act and deed for the uses and purposes therein mentioned," substantially conforms to the statutory requirements of such certificate prescribed by section 1189 of the Civil Code, and shows that the grantor acknowledged that he "executed" the deed, within the meaning of that section. The fact that it also certified to the sealing of the instrument did not vitiate the acknowledgment.

APPEAL from a judgment of the Superior Court of Fresno County and from an order refusing a new trial. H. Z. Austin, Judge.

The facts are stated in the opinion of the court.

Carter & Carter, for Appellants.

George Cosgrave, and Frank Kauke, for Respondent.

SHAW, J.—This is an action to quiet title and determine adverse claims to a section of land. The plaintiff proved a title derived from the United States. The defendant Hotchkiss, claims title solely under two deeds from the state of California to one Barthold, executed by the county tax-collector of Fresno County, purporting to be made in pursuance of sales and deeds to the state for delinquent taxes. Barthold afterward conveyed the land to Hotchkiss. The defendant Canty, claims a right to purchase from Hotchkiss the undivided one half of the land.

The judgment of the court below was that the plaintiff is the owner of the land and that his title thereto be quieted as against the defendants, that the defendants have no right, title, or interest in the land, and that they be enjoined from asserting any title, claim, or equity thereto. It further ad-

judged that the plaintiff be required to pay to the defendant
Hotchkiss, within thirty days, the sum of $327.58. That sum
is the amount, without interest, of the sums paid by Hotchkiss
and Barthold to the state as purchase money and for taxes
on the land accruing after the sale to the state. Plaintiff
alleged a tender thereof by him, before suit, and refusal by
defendant to accept the money. Hotchkiss set up these pay-
ments in his answer and asked that if plaintiff was adjudged
the owner the judgment for him "be made upon the con-
dition" that he repay these sums, with interest, to the said
Hotchkiss. The judgment was not made conditional, nor was
Hotchkiss given interest on the money paid, or any lien upon
the land for the sum the judgment requires plaintiff to pay to
him. Hotchkiss and Canty appeal from the judgment, also
from an order refusing a new trial and from an order deny-
ing their motion to vacate the judgment and render a different
judgment upon the findings.

The original tax-sales upon which the defendants' claim
rests were made in 1893 and 1894. That for the north half
of the section was in July, 1893; that for the south half in
July, 1894. At these respective dates, the law provided that
if property sold for delinquent taxes was not redeemed within
the time allowed by law, no deed could be made to the pur-
chaser in pursuance of such sale, unless the purchaser had,
thirty days before applying for such deed, given notice to the
owner or occupant of the land of the amount due and the time
when he would apply for the deed. (Pol. Code, sec. 3785;
Stats. 1891, p. 134.) The deed by the tax-collector to the
state for the north half of the section was made on November
1, 1898; that for the south half was made on July 18, 1899.
The deeds from the state to Barthold, based on these tax-
sales and deeds to the state, were made on April 14, 1905.
The notice required by section 3785, as aforesaid, was not
given in either case. The failure to give these notices makes
the deeds of the tax-collector to the state and his subsequent
deeds, based thereon, on behalf of the state to Barthold, in-
operative and void. They conveyed no title. This proposi-
tion was fully considered and decided in *Johnson* v. *Taylor*,
150 Cal. 201, [119 Am. St. Rep. 181, 88 Pac. 903, 10 L. R. A.
(N. S.) 818]. (See, also, *King* v. *Samuel*, 7 Cal. App. 63, [93
Pac. 391]; *Wetherbee* v. *Johnston*, 10 Cal. App. 264, [101

Pac. 802].) The appellants concede this. Their principal point is that, as successor of the purchaser at the tax-sales, Hotchkiss is entitled not only to reimbursement of the sums paid by him and Barthold in discharge of taxes regularly levied and assessed against the land and which had become valid liens thereon, but also to interest thereon from the respective dates of such payments, and that the repayment thereof should have been enforced before judgment, or at least that it should have been made a condition precedent to the taking effect of the judgment in favor of the plaintiff. The question is whether the rule that he who seeks equity must do equity, applies to suits in equity to set aside a tax-sale or tax-deed, or to suits under section 738 of the Code of Civil Procedure in which a judgment for the plaintiff will, in effect, cancel or annul such sale or deed. The decisions on the subject in this state are inconsistent. The same point is involved in several other cases filed of even date herewith. We therefore deem it proper to consider the question at some length.

It is now firmly settled by our decisions that where a property-owner applies for equitable relief against the public authorities, as, for example, to restrain proceedings for the collection or enforcement of taxes assessed against it, or to enjoin the execution of a tax-deed, or to cancel a lien or charge for taxes, of record against his land, and it appears that all or some part of the tax charged is justly and equitably due from the plaintiff, or chargeable upon the land, he must, as a condition of obtaining such relief, first pay or offer to pay the amount justly due, or he must be required to do so before the relief to which he shows himself entitled is given. (*Couts* v. *Cornell*, 147 Cal. 560, [109 Am. St. Rep. 168, 82 Pac. 194], and cases there cited; *Grant* v. *Cornell*, 147 Cal. 565, [109 Am. St. Rep. 173, 82 Pac. 193]; *Trippet* v. *State*, 149 Cal. 530, [8 L. R. A. (N. S.) 1210, 86 Pac. 1084]; *Savings etc. Soc.* v. *Burke*, 151 Cal. 616, [91 Pac. 504]; *San Diego etc. Co.* v. *Cornell*, 151 Cal. 198, 200, [90 Pac. 1130].)

The rule applicable in suits by a property-owner against the purchaser at a tax-sale, or his grantee or assignee, to quiet title, or to cancel the certificate of sale or the deed thereon, or a suit against such parties, under section 738 of the Code of Civil Procedure, to determine the adverse claim, is not so

well established. In some such cases the application of the
above rule has been denied, in others it has been limited, and
in still others the rule has been enforced.

The question first arose in *Hibernia. Soc.* v. *Ordway,* 38
Cal. 679, a suit to foreclose a mortgage. The defendant, And-
erson, held a tax title and in virtue thereof had obtained judg-
ment against the mortgagors, in ejectment, for possession.
The tax title was held invalid because of irregularities in the
sale. The court said: "That where the tax is valid, but the
sale irregular, equity will not cancel the tax-deed at the suit
of the owner of the land without a tender of the taxes to the
purchaser, is not denied." Such relief was there denied be-
cause Anderson had fraudulently conspired with the two
mortgagors to hold the tax title for them in order thereby to
bar the mortgage lien, thus violating the other maxim that
equity will not relieve one who does not come into court with
clean hands.

In *Harper* v. *Rowe,* 53 Cal. 233, the defendant claimed under
a tax-deed which was void because the state tax for the year
1863, included in the charge for which it was sold, was wholly
unauthorized. He also claimed under a tax-sale for taxes
of 1875 which was invalid because the sale was for a sum
greater than the legal charges. The action was brought to
determine adverse claims, under section 738 of the Code of
Civil Procedure. The court declined to say whether or not
this was an action in equity, but, conceding that it was, said:
"If the sale is absolutely void, the payment of the tax by the
purchaser stands on the footing of a voluntary payment, not
made at the request of the owner of the land, and which he is
under no obligation to refund. If the tax-sale was not void,
but only irregular in some respects, and if the owner should
go into equity to cancel the sale, and to compel a purchaser
in good faith to surrender the evidences of his title, it is pos-
sible that the court would not grant relief except on condition
that the purchase money was refunded. But that would be
a very different case from the present." It is somewhat diffi-
cult to understand this reasoning. No proposition is better
settled than this, that proceedings to sell property for taxes
are to be strictly followed and that if there is any material
irregularity in the assessment or in the subsequent proceed-
ings, the sale, and the certificate and deed based thereon, are

absolutely void. In view of this principle, the phrase "if the tax-sale was not void, but merely irregular in some respects" seems meaningless in the connection in which it is used. If there is no material irregularity, the grantee in the tax-deed will have the title and cannot, nor need he, ask reimbursement; if there is a material irregularity, his deed is void. The only explanation is that the court was referring to cases where the tax, itself, was void, so that in point of law, the land had not been relieved of any burden by the tax-sale. In that case, this was true of only a part of the tax in question. The remark seems to have no application except to that part.

*Greenwood* v. *Adams,* 80 Cal. 74, [21 Pac. 1134], denies the right to repayment or to a conditional judgment, in these words, "Parties who purchase property at tax-sales acquire the title to the property if all the proceedings for the levy of the taxes and the sale are regular and in strict conformity to law; but if not so, they acquire no rights *to the property* which either a court of law or equity can enforce." (Italics ours.) The sale in question was void because of an irregularity in the assessment, the owner not having been properly named therein.

In *Kittle* v. *Bellegarde,* 86 Cal. 556, [25 Pac. 55], the judgment cancelling a street-assessment sale, but not directing reimbursement to the purchaser for money paid, was affirmed, but the equity rule aforesaid was not discussed or mentioned, and it appears that the assessment upon which the sale was made was utterly void.

*Dranga* v. *Rowe,* 127 Cal. 506, [59 Pac. 944], was a suit against the city of San Diego and others to quiet title. The city answered separately; alleging a lien for taxes assessed upon the property and praying that no judgment be made quieting plaintiff's title, except on condition that the tax be paid. The city was the sole appellant. It was held that the tax was void. The opinion then states that the appellant claims reimbursement under the equity rule, as if the purpose was to discuss and decide the point. But it then decides the case by affirming the judgment, without further mention of the question. It decides the case, but does not decide the question except by implication. It may be added that the appeal presented a case against the city alone and the decision is directly in the teeth of *Couts* v. *Cornell* and the other like

cases first above cited, and it must now be considered as over-
ruled by those cases.

The last decision of this court on the precise point is *Ellis* v.
*Witmer,* 134 Cal. 249, [66 Pac. 301]. Witmer had bought a
lot at a sale by the city treasurer to satisfy a bond issued upon
a street-assessment. The owners sued Witmer and the treas-
urer to cancel the certificate and restrain the execution of a
deed thereon to Witmer. It was held that the assessment and
bond were valid, but that the sale was void. The judgment
was reversed because the plaintiffs had not offered to pay
the amount due on the bond and because the court below had
not inserted such condition in the judgment. The court said
that the plaintiffs "cannot successfully invoke the assistance
of a court of equity against the irregularities in the sale com-
plained of, unless on the condition of paying what is due from
them."

There are two decisions on the subject by the district court
of appeal of the third district. In the first, *Flanagan* v.
*Towle,* 8 Cal. App. 229, [96 Pac. 507], the court quoted and
followed the rule as stated in *Ellis* v. *Witmer,* 134 Cal. 249,
[66 Pac. 301]. In the other case, *Hotchkiss* v. *Hansberger,*
15 Cal. App. 603, [115 Pac. 957], that court overruled *Flan-
agan* v. *Towle* and followed the decision of the supreme court
in *Greenwood* v. *Adams,* 80 Cal. 74, [21 Pac. 1134]. It dis-
tinguished *Couts* v. *Cornell* and other similar cases, includ-
ing *Ellis* v. *Witmer,* by the statement that they were suits
against public officials where some tax was justly owing to
the state or city, apparently failing to observe that *Ellis* v.
*Witmer* was a suit against a purchaser and the city treasurer
and that the assessment was owing to the purchaser and not
to the city.

The confusion thus apparent seems to have arisen from the
failure to observe the difference between the cases where the
tax purchaser is the actor and those in which relief in equity
is sought against him. If the purchaser, claiming title under
his tax-deed, sues for possession of the land, or if, perceiving
that the deed is invalid, he sues the owner to recover the tax
paid, as money paid to his use, the general rule is that he
cannot prevail, that the rule of *caveat emptor* will be strictly
applied against him, that a proceeding to assess and collect
taxes creates no contract by the owner to pay the tax assessed,

and that the law will not imply a contract by the owner to refund such tax to one who has paid the same upon a tax-sale which is void, and this is true in cases where the tax was legally assessed but the proceedings to sell defective, as well as where the assessment, itself, is unauthorized and void, or where the tax had been previously paid. Mr. Pomeroy says: "In the first place, the rule only applies where a party is appealing as *actor* to a court of equity in order to obtain some equitable relief. . . . The rule may apply, and under its operation an equitable right may be secured or an equitable relief awarded to the defendant which could not be obtained by him in any other manner—that is, which a court of equity, in conformity with its settled methods, either would not, or *could* not, have secured or conferred or awarded by its decree in a suit brought for that purpose by him as the plaintiff." (1 Pomeroy's Equity Jurisprudence, sec. 386.) The doctrine is thus stated in Cooley on Taxation: "The rule of *caveat emptor* applies to tax purchasers. The purchaser at a tax-sale will therefore lose what he had paid if his deed is subject to fatal infirmity. This is the rule unless the statute recognizes an equity in him and provides for it. . . . Unless the statute in terms gives it, the purchaser will have no lien on the land for the sum paid on the purchase." (Vol. 2, p. 1017.) The author here speaks concerning rights which the purchaser can enforce by action, not of limitations in equity upon the right of the owner to sue for a cancellation of the sale or deed. As to the latter, he says: "In vacating a tax or a sale for taxes as a cloud upon title it is proper to require the complainant to pay any sum that is either a legal or an equitable charge against him, and which will be affected by the decree. And this will be required although an action against him for such sum would be barred by the statute of limitations. If the tax were wholly illegal in its essentials, of course no such requirement could be made, for it would not be supported by any equity." (Vol. 2, p. 1455.) And further: "As in removing cloud, he who seeks relief against a tax-deed must pay or offer to pay whatever taxes, interest, costs, etc., are justly chargeable against the land, and payment will be required by the decree; otherwise, where the taxes were absolutely void." (Vol. 2, p. 1458.) These, we consider accurate statements of the true rule. A large number of cases are cited in

the foot notes. We have not deemed it necessary to examine them all. The following will be found to support the text: *Farwell* v. *Harding*, 96 Ill. 32; *Gage* v. *Nichols*, 112 Ill. 269; *Phelps* v. *Harding*, 87 Ill. 445; *Barnett* v. *Cline*, 60 Ill. 205; *Adams* v. *Castle*, 30 Conn. 404; *Lancaster* v. *DuHadway*, 97 Ind. 566; *Morrison* v. *Jacoby*, 114 Ind. 84, [14 N. E. 546, 15 N. E. 806]; *Montgomery* v. *Trumbo*, 126 Ind. 332, [26 N. E. 54]; *Peckham* v. *Millikan*, 99 Ind. 355; *Knox* v. *Dunn*, 22 Kan. 683; *Brown* v. *Finley*, 51 Neb. 468, [71 N. W. 34]; *Dillon* v. *Merrian*, 22 Neb. 152, [34 N. W. 344]; *Wood* v *Helmer*, 10 Neb. 65, [4 N. W. 968]; *Boeck* v. *Merriam*, 10 Neb. 201, [4 N. W. 962]; *Powers* v. *Bank*, 15 N. Dak. 469, [109 N. W. 361]; *Lohr* v. *George*, 65 W. Va. 249, [64 S. E. 609]; *Toothman* v. *Courtney*, 62 W. Va. 185, [58 S. E. 915]. We have found no well considered case to the contrary. For statements of the general rule that "he who seeks equity must do equity," see 1 Story's Equity Jurisprudence, 13th ed., sec. 64e; 1 Pomeroy's Equity Jurisprudence, secs. 385, 388.

In view of this weight of authority and the inconsistency of our own cases on the subject, the decisions which deny the applications of the rule to tax cases should be deemed over-ruled, and the correct principle declared. Where the owner comes into equity asking equitable relief to remove or cancel a tax-deed or sale as a cloud upon his title, or to obtain a judgment which, in effect, will invalidate such sale or deed, the court should refuse any relief except upon the condition that he first repay to the tax purchaser, or his grantee or assignee, the taxes, penalties, interest, and costs justly chargeable upon the land and which the purchaser has paid at the sale, or afterward upon the faith of it, with legal interest from the time of such payment, less rents received, if any, if the purchaser has been in possession.

Respondent suggests that this rule is applicable only in suits which, under the division of actions between courts of law and equity formerly prevailing in England, would have been cognizable only in equity, that an action to determine adverse claims under section 738 of the Code of Civil Procedure, being an action authorized by statute, is an action at law, in which the equity rule cannot be enforced. It is sufficient to say on this point that the decisions hold that the rule applies in such actions to the same extent as in suits of

the character formerly cognizable in equity to remove a cloud or cancel an instrument. (*Benson* v. *Shotwell,* 87 Cal. 60, [25 Pac. 249]; *Hancock* v. *Plummer,* 66 Cal. 338, [5 Pac. 514]; *Brandt* v. *Wheaton,* 52 Cal. 433.)

It will be observed from the statements of the rule above given, that the defendant who has removed encumbrances or paid claims which the plaintiff ought justly to repay to him as a condition of obtaining the equitable relief sought by the suit, is entitled to interest on the sums so paid, and to have the repayment secured to him in some manner. This may be done either by requiring such repayment to be made or deposited in court before giving the judgment, or by inserting in the judgment a clause that it shall not take effect until such repayment be made. The judgment in the present case did not do either. The latter mode may properly be adopted in cases where the defendant is directed by the judgment to do something himself, as to execute a prescribed deed, or release, or where the judgment directs the officers of the court to cancel a deed or enter satisfaction of a lien of record, as and for the defendant in case he refuses. But in cases where the judgment declares and adjudges the title outright, the more convenient and effective method is to require restitution to be made by the plaintiff before or at the time of rendering the judgment. The defendant, Hotchkiss, was entitled to a judgment allowing interest in addition to the principal and by inserting a clause which would have made his claim for restitution effectual and the judgment conditional and dependent upon reimbursement to him.

Appellant makes the further objection that the plaintiff's evidence did not show that the title to the land was vested in him. This objection is based on alleged defects in the certificates of acknowledgment of two deeds comprising a part of plaintiff's chain of title. The objections are without merit. In one of the deeds the officer certified that the grantor "acknowledged *to me*" the execution of the deed. The statutory form for such certificates in force at that time did not contain the words "to me." The effect is the same and variation is immaterial. The other deed was acknowledged before a notary public of the state of Washington. Our law authorizes a notary of another state to take acknowledgments of deeds conveying lands within this state. (Civ. Code, sec.

1182, subd. 4.)   Section 1189 of the Civil Code provides that an acknowledgment taken without the state in the manner provided by the law where it is made is good in this state. It further provides that the certificate of the clerk of a court of record of the county where such foreign acknowledgment is made, to the effect that such acknowledgment was taken in accordance with the laws of the place where it was made, is sufficient proof of such conformity.   Compliance with this formality was not made in the case of this deed.   The provision of section 1189 in regard to certificates of the clerk is applicable only to cases where the certificate of acknowledgment does not show an acknowledgment which would be good under our own statutes.   If it would be good here, and the officer is one authorized by our statutes to take proof of acknowledgments without the state, no certificate from the clerk of the other state is required.   The notary certified that the grantor "appeared before me, being personally known to me to be the same person described in and who executed the foregoing instrument and acknowledged that he signed and sealed the same as his free and voluntary act and deed for the uses and purposes therein mentioned."   As acknowledgment seldom succeeds, or even accompanies, actual delivery to the grantee, it is clear the word "executed" in the statutory form prescribed (Civ. Code, sec. 1189), should not be construed to include such actual delivery.   But the words used, taken altogether, mean substantially the same thing as the word "execution" and the certificate is sufficient.   (Jamison v. Jamison, 3. Whart. 471, [31 Am. Dec. 536]; McIntire v. Board, 5 Binn. 296, [6 Am. Dec. 417]; Halls v. Thompson, 1 Sm. & M. (Miss.) 443, 489; Davar v. Cardwell, 27 Ind. 478; Woodruff v. Garner, 27 Ind. 4, [89 Am. Dec. 477].)   Substantial compliance with the statute is sufficient and if the words used are equivalent in meaning to those prescribed, the certificate is good.   (Reed v. Bank of Ukiah, 148 Cal. 96, [82 Pac. 845]; Duckworth v. Watsonville etc. Co., 150 Cal. 534, [89 Pac. 338].)   The fact that it also certified to the sealing of the instrument does not vitiate the acknowledgment, although such sealing is unnecessary in this state.

There are no other points requiring notice.   The record shows the amounts paid by the defendant as taxes on the lands to be $327.58.   This does not include interest.   It includes

payments of taxes accruing after the sales, amounting to $134.80, but the dates of these payments do not appear, and the interest accrued thereon cannot be computed. Enough appears, however, to show that the amount tendered by the plaintiff did not cover the principal and interest of the purchase money and the subsequent taxes paid by defendant and his grantor. This is important only upon the question of the stoppage of interest (Civ. Code, sec. 1504; *Leet* v. *Armbruster*, 143 Cal. 668, [77 Pac. 653]), and the question of the imposition of costs, which, in such cases, rests largely in the discretion of the trial court. (*Gray* v. *Dougherty*, 25 Cal. 282.) A new trial will be necessary, but it should be limited to the inquiry as to the amount of the payments made by Hotchkiss and Barthold and interest thereon, to which defendant is entitled before judgment quieting plaintiff's title is made. All other facts involved in the case were fully tried and found by the court, and the evidence shows that as to them no other result should follow. The court, upon rendering judgment, will, of course, again consider the question who should pay the costs of suit in the trial court and may take additional evidence on that point.

The judgment is vacated, and the order denying a new trial is reversed, so far as the question of the amounts paid by the defendant and his grantor and interest, the deposit of the same in court, and the right to recover costs of suit are concerned. The cause is remanded for a new trial of these issues alone. The findings on all other issues are to stand. The court below is directed, after determining these questions, to proceed with the case and to render judgment in accordance with this opinion.

Angellotti, J., Lorigan, J., Henshaw, J., and Melvin, J., concurred.