# CHARLESTON.

BOWLBY v. DE WIT.

Submitted Sept. 12, 1899—Decided Dec. 9, 1899.

| | |
|---|---|
| 47 | 323 |
| f48 | 247 |
| f48 | 448 |

| | |
|---|---|
| 47 | 323 |
| e53 | 235 |

| | |
|---|---|
| 47 | 323 |
| 56 | 243 |

| | |
|---|---|
| 47 | 323 |
| f65 | 248 |

1. ATTACHMENT—*Levy—Lien.*

   An attachment, is a lien on personal estate from levy though no bond be given to authorize the officer to take possession, and one purchasing of the debtor with notice of the levy takes subject to it. (p. 324).

2. APPEALS—*Joinder.*

   Where one party only appeals, and the rights of him and another stand on distinct and separate grounds, and are not equally affected by the decree or judgment, that appeal will not bring up for adjudication the rights of the other; but when their rights are not only involved in the same question, but equally affected by the decree or judgment, the appeal of one will call for an adjudication of the rights of the other not appealing. But in the former case, if the party not appealing appears in the appellate court and assigns error, he unites in the appeal, and his case will be considered. (p. 325).

3. PURCHASER—*Title—Attachment.*

   The title of one who purchases of an attachment debtor property levied under it with intent to defeat such levy is void as to it. (p. 327).

4. PURCHASER—*Lis pendens.*

   *Lis Pendens* and pendents lite purchasers referred to. (pp. 326-327.

Appeal from Circuit Court, Ritchie County.

Bill by C. H. Bowlby against Ira De Witt and others. Decree for plaintiff, and De Witt alone appeals.

*Affirmed.*

R. S. BLAIR, Jr., for appellant.

ROBINSON & PIERPONT, for appellee.

BRANNON, JUDGE:

Bowlby brought a suit in equity in the circuit court of

Ritchie County against De Witt to recover a debt arising from judgments against De Witt in Pennsylvania, and sued out an attachment against the estate of De Witt on the ground of his nonresidence and fraud, which was levied on the eighth interest of De Witt in certain oil leases and personal property, and certain other personal property in which he owned the entirety. The property levied on was conveyed by Rowland to Dewitt by deed dated June 8, 1898, and was levied on July 5. 1898, and reconveyed by De Witt to Rowland August 3, 1898. Rowland filed his petition setting up his claim to the property as exempt from the attachment. The case ended in a decree for Bowlby's debt against De Witt,—he having answered,—and directing the sale of the property levied upon, and De Witt alone appealed.

It is assigned as error that equity has no jurisdiction of the case, as there is adequate remedy at law. I take it that it is unnecessary to do more than say that equity has jurisdiction of a suit upon a purely legal demand against a nonresident, with an attachment levied on property. Code, c. 106, s. 1; *McKinsey* v. *Squires*, 32 W. Va. 41, (9 S. E. 55).

It is assigned as error that the Sunlight Oil, Gas and Refining Company is not a party. Why should it be? The bill did state, as showing fraudulent transfers by De Witt to defeat the plaintiff's recovery of his debt, as one of his acts, that De Witt had transferred some property to that company, but did not charge fraud on the company, nor ask, nor did the plaintiff get, any decree against that property. That property was not levied upon under the attachment, nor proceeded against in the bill, nor touched by the decree. It was pretended by Rowland that he transferred some property to De Witt, as agent for that company, for advances of money on work Rowland was to do for it; but, if this was the truth, it was not so stated in the deed, and Rowland swears positively that the company had been repaid and its right ended, and DeWitt distinctly swears the same; and he conveyed back to Rowland, and thus said company had not a shadow of interest. Its rights would be void for want of record, if it had any. *Poling* v. *Flanagan*, 41 W. Va. 191, (23 S. E. 685).

It is assigned as error that the claim to the property set up by Rowland was disallowed.   Rowland aid not unite in the appeal, but it -is argued that the appeal of De Witt brings the whole case up.   We are referred to *Walker's Ex'r* v. *Page*, 21 Gratt. 636, to show that where parties appealing stand on the same ground as those not appealing, and their rights are involved in the same question, and equally affected by the same decree or judgment, the court of appeals will settle the rights of all. But the rights of De Witt and Rowland are not equally and likewise affected.   The decree is personal against De Witt,—not against Rowland at all.   De Witt disclaims title in the property sold.   Rowland alone claims it.   It is Rowland's property that is held liable.   His title only is affected, and, if dissatisfied, he should defend it by appeal.   If the decree were reversed as to Rowland, De Witt would not get the property or profit by it.   The case cited shows that where the rights of two parties are separate, and not equally affected by the decree, the appeal of one will not bring up the rights of the other for adjudication.   So does *Shoe Co.* v. *Haught*, 41 W. Va. 275, (23 S. E. 553).   If Rowland were appealing, he could complain that the debt was wrongly decreed against De Witt, because interested in that question, as it established a debt affecting his property; but De Witt loses nothing in the property, because he expressly disclaims interest in it.   *Tate* v. *Liggat*, 2 Leigh, 84, was a suit to cancel a fraudulent deed from A. to B., and B. appealed.   Though the decree as to B. was reversed, yet the decree against A. for the debt could not be on B.'s appeal.   This shows the separate interests in our case.   As the decree is good as to De Witt, we could not reverse that clause of it denying, validity of Rowland's claim,—he not appealing,—merely on De Witt's ·request. But, Rowland having appeared in this court and assigned error, I think that we must consider his case, as if he had appealed, because he thus unites in the appeal, and because an affirmance would bind him, as a finality, and therefore he ought to be heard.   *Blowpipe Co.* v. *Spencer*, 46 W. Va. 590, (33 S. E. 342).   Rowland purchased of De Witt some time after the levy of the attachment.   Code, c. 106, s. 9, gives a lien from levy.   Anybody purchasing of the debtor

after levy is by common law a pendente lite purchaser, and takes subject to the lien of the attachment, whether he had notice or not. "A purchase made of property actually in litigation, pendente lite, though for valuable consideration, and without actual notice, is yet subject to the decision of the suit; and this doctrine is based, not on the presumption of notice, but on reasons of public policy, which make it indispensable, in order to prevent an indefinite multiplication of suits, and give effect to the determination of courts." Bart. Ch. Prac. 1087; *Wilfong* v. *Johnson*, 41 W. Va. 283, (23 S. E. 730); *Stout* v. *Mercantile Co.*, 41 W. Va. 340, (23 S. E. 571). A purchaser takes subject to the attachment. 3 Am. & Eng. Enc. Law (2d Ed.) 215. An attachment at common law is notice of its lien. This doctrine of notice arising from the mere pendency of a suit to recover specific property, real or personal, is still the law. The act requiring record of lis pendens (Code 1891, c. 139, s. 13) applies only to suits to charge real estate with debt, not to suits to recover it. *O'Connor* v. *O'Connor*, 45 W. Va. 354, (32 S. E. 276). It applies neither to suits to recover nor suits to charge personalty. *Osborn* v. *Glasscock*, 39 W. Va. 749, (20 S. E. 702). But it is claimed that by section 9, chapter 106, if no bond be given under section 6 to authorize the officer to take possession of the property levied on, and the property is sold by the debtor for valuable consideration, the lien of the attachment ceases. Undoubtedly this works a change from the rule of the common law as to pendente lite purchasers. Under it the mere suit is not notice. But it works such change only in favor of an honest purchaser,—one without notice of the attachment. The statute does not mention notice, but it is to be implied; for it cannot be possible that as the statute gives a lien, though no bond be given, it intended to nullify that lien in favor of one having full notice of the creditor's prior right, and thus overturn, in this particular instance only, the law which in other cases (such as second purchasers or mortgagees taking with notice of prior conveyance or mortgage or judgment) subordinates the second man to the prior purchase or lien. It does not give such premium to fraud. The said statute requiring a lis pendens of suits affecting land to be recorded expressly

says it shall not be necessary as to purchasers with notice. That applies to attachments. One purchasing land with notice of it is affected, though no lis pendens is recorded. Of course one purchasing chattels with notice of an attachment would be in no better condition. The attachment levied is a lien without bond. That is only necessary if desired to take the actual possession by the officer. Why give bond to take actual possession of an undivided eighth in oil leases,—the chief property levied on in this case? The officer could not take actual possession. What good does a bond do as to a debt garnished? The clause referred to in section 9 merely abolishes the above rule of the common law as to suit alone being notice by requiring notice otherwise in the case of personalty levied under attachment. "When one purchases without actual or constructive notice of a prior attachment and for good consideration he is a *bona fide* purchaser, and his title will be good against the world. But if he have any notice whatever of the prior attachment, he will take in subordination to it." 1 Shinn. Attachm. § 421; Wap. Attachm. § 830. Now Rowland, does not, in his petition, allege that he purchased without notice of the attachment lien. "In setting up a *bona fide* purchase for value without notice, the consideration must be stated, with distinct averment that it was *bona fide*. Notice, whether charged or not, must be denied previous to, and down to the time of, paying the money and delivery of the deed." 16 Am. & Eng. Enc. Law 836. "The plea must also deny notice of the plaintiff's title or claim previous to the execution of the deed, and payment of the consideration." Story Eq. Pl. § 806. He must both aver and prove want of notice. Rowland did neither. He was a witness. He made no pretense that he did not know of the attachment,—virtually says he did. Besides this transfer back to Rowland from De Witt was with intent to defraud Bowlby. Their own evidence shows it. Rowland was asked why he had transferred the property to De Witt, and, after equivocating, he said, "This has come on rather sudden, and I would ask for a little time to consider." Why not answer out? In a second examination he admitted that he did so to keep the property from his creditors. Then when De Witt, in a few weeks only, gets into trouble

and is sued, and the property is levied, he transfers it back to Rowland. All the circumstances show plainly that they united in shifting this property from one to the other to defeat creditors. This conveyance to Rowland was fraudulent in fact as to Bowlby.

Even if I were wrong in the opinion above expressed as to notice destroying the purchase, if honest, the fact of this fraudulent intent would annul it. Bowlby's deposition is so unsatisfactory, contradictory, and evasive, that it establishes fraud. His suppression of the deed to himself is a strong circumstance. Why keep it from the record?

As to the claim that a jury should have tried the right of property: This is a chancery suit, and the jury right does not exist in chancery. Long before the constitution of the new state, giving jury trials in controversies at common law, equity exercised jurisdiction of attachments in equity, and the constitution gave the jury only in trials at common law. Bear in mind that Rowland's purchase was after the levy, and his petition did not plead the defense of *bona fide* purchaser, and therefore it showed no *prima facie* case of title. If true in every word, it showed no title in Rowland. President Johnson, in speaking of a similar point in *Chapman* v. *Railroad Co.*, 26 W. Va. 327, said: "It certainly cannot be contended that a proper construction of this section will permit mere naked legal questions to be submitted to a jury. This section cannot be so construed. If the petition shows a prima facie right in the petitioner to the property,—a title better than that of the defendant,—then the court should impanel a jury to inquire into the claim; but if the petition shows clearly that at the time the attachment was levied the petitioner had no claim to the property, no interest in it, it would be folly to impanel a jury to inquire into a claim which the petition itself showed did not exist. The case of *Anderson* v. *Johnson*, 32 Gratt. 558, is in harmony with this view. There the petition, if true, showed the petitioner had purchased the property before it was attached." Decree affirmed.

*Affirmed.*